**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

**CHAMBERS OF**
**THE HONORABLE GINA L. SIMMS**
**UNITED STATES MAGISTRATE JUDGE**

**6500 CHERRYWOOD LANE**
**GREENBELT, MARYLAND 20770**

August 19, 2026

LETTER TO COUNSEL

RE: *Shayla S. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-02761

Dear Counsel:

Pending before this Court are briefs filed by Plaintiff Shayla S. and the Social Security Administration. (ECF Nos. 13, 14). Upon review of the filings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

The Court must uphold the decision of the Social Security Administration ("SSA" or the "Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial-evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will reverse the Commissioner's decision in part and remand the case back to the SSA for further consideration.

## I. BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on March 14, 2022. (Tr. 27, 226-28). In the application, the Plaintiff alleges that disability began on May 11, 2018. (Tr. 27, 226-28). The claim was initially denied on March 3, 2023, and upon reconsideration, denied again on May 11, 2023. (Tr. 27, 82, 111-14). On May 26, 2023, Plaintiff filed a written request for a hearing, which was granted. (Tr. 115-16, 158). An Administrative Law Judge ("ALJ") held a video hearing on June 12, 2024. (Tr. 27, 47-71). During the hearing, Plaintiff amended the onset date of her disability to March 14, 2022. (Tr. 27, 49). On July 15, 2024, the ALJ found that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from the amended alleged onset date through September 30, 2022, the last date insured. (Tr. 24-46). On July 1, 2025, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated July 15, 2024, became the final and reviewable decision of the SSA. (Tr. 1-7). *See* 20 C.F.R. § 422.210(a). Thereafter, on August 21, 2025, Plaintiff sought judicial review of the Agency's decision in the U.S. District Court-MD, pursuant to 42 U.S.C. § 405(g). (ECF No. 1).

## II. THE LAW

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the "Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "medically determinable impairments of which [the ALJ is] aware, including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (alteration in original) (quoting 20 C.F.R. § 416.945(a)(2)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At steps one through four, it is the claimant's burden to show that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).

## III. ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The ALJ first evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 29-43). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of March 14, 2022 through September 30, 2022, her date last insured. (Tr. 29). At the second step, the ALJ found that Plaintiff had severe impairments of "posttraumatic stress disorder (PTSD); bipolar disorder, current or most

recent episode depressed, with psychotic features; anxiety; and migraine headaches." (Tr. 30). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings in 20 C.F.R. Part 404, Subpt. P, App'x 1. (Tr. 31-33). Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC, and found that she could:

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant could tolerate occasional interaction with coworkers and supervisors, and no interaction with the general public. She could not sustain work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. She could use judgment to make simple work-related decisions, deal with occasional changes in a routine work setting, and understand, remember, and carry out simple instructions on a regular and sustained basis to complete a normal work day and week. She could tolerate occasional exposure to wetness, humidity, loud and very loud noise (as defined in the Dictionary of Occupational Titles), vibration, and concentrated respiratory irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. She could tolerate no exposure to hazards of ladders, ropes and scaffolds, high exposed places, and dangerous unguarded machinery.

(Tr. 33). At step four of the sequential evaluation process, the ALJ found that Plaintiff had no past relevant work. (Tr. 41). Before making a finding regarding step five, the ALJ conducted a hearing on March 20, 2025. (Tr. 47-71).

At the hearing, a vocational expert ("VE") testified, relying upon the *Dictionary of Occupational Titles.* The ALJ asked the VE whether a hypothetical person with no past relevant work and the same RFC as the Plaintiff would be able to perform any work and asked her to provide some examples of any such work. (Tr. 66-67). The VE testified that there are jobs that this hypothetical individual would be able to perform work existing in the national economy, e.g., store laborer, hand packager, and industrial cleaner. (*Id.*). In a second hypothetical, the ALJ inquired about whether the hypothetical individual with the same RFC would be able to perform this work with limited to no interaction with the general public. (*Id.*). The VE opined that the hypothetical individual could perform these jobs since they did not require public contact. (*Id.*). Next, the ALJ asked the VE what the general tolerance for absences and off-task behavior in competitive work is. (Tr. 68). The VE opined that an individual missing one or more days of work per month, including arriving later, leaving early, and not showing up at all, would not be able to maintain employment over time; and once there is a loss of productivity of 15%, there would no longer be employment for that individual. (*Id.*). Finally, as is relevant here and set forth more fully below in Section IV, the ALJ posed a hypothetical to the VE involving Plaintiff's exposure to certain environmental hazards, including to "dangerous regarded(sic) machinery." (Tr. 66-67).

At step five of the sequential evaluation, the ALJ found that Plaintiff was able to perform

other work available in significant numbers in the national economy, namely as a hand packager or industrial cleaner. (Tr. 41-43). Based on this finding, the ALJ concluded that Plaintiff was not disabled at any time during the relevant period. (Tr. 43).

## IV. DISCUSSION

On appeal to this Court, Plaintiff contends that substantial evidence does not support the ALJ's denial of disability benefits. In particular, Plaintiff argues that two issues warrant remand. First, the ALJ fashioned an RFC that contained certain restrictions, yet the hypotheticals posed to the VE did not take into account all of Plaintiff's impairments and restrictions when assessing whether Plaintiff could perform certain jobs. Thus, substantial evidence does not exist to support the finding that Plaintiff could work as a hand packager or industrial cleaner. Second, that the ALJ failed to address an apparent conflict between the Dictionary of Occupational Titles ("DOT") description of certain jobs and the VE's testimony that Plaintiff could engage in said jobs. (ECF No. 13, "Plaintiff's Motion," pp. 4-8). In response, the SSA counters that Plaintiff has not identified any error by the ALJ that requires remand. (ECF No. 14, "Agency's Motion," pp. 7-10).

I have carefully reviewed the arguments and the record. I find that the ALJ erred when posing a hypothetical to the VE that failed to fully account for Plaintiff's impairments and restrictions. Accordingly, I find that remand is appropriate, for the reasons set forth below, and I decline to address Plaintiff's remaining argument.

To aid an ALJ in determining whether a claimant can perform her past relevant work or whether work exists in the national economy that a claimant can perform, frequently a vocational expert is used. *Holloway v. Astrue*, Civ. No. 11-35, 2011 WL 7053614, at *9–10 (E.D. Va. Dec. 15, 2011), *report and recommendation adopted*, 2012 WL 159750 (E.D. Va. Jan. 18, 2012). In addition, the SSA can demonstrate "that [a] claimant is not disabled only if the vocational expert's testimony that jobs exist in the national economy is in response to questions from the ALJ that accurately reflect the claimant's work-related abilities." *Morgan v. Barnhart*, 142 Fed. App'x 716, 720–21 (4th Cir. 2005). Moreover, "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (quoting *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006)). Furthermore, in making disability determinations, an ALJ must rely primarily on the DOT for information about the requirements of jobs existing in the national economy. *See* SSR 00-4P, 2000 WL 1898704, (Dec. 4, 2000). Ultimately, before relying on testimony by the vocational expert, an ALJ is duty bound to identify and obtain reasonable explanations for any conflicts between occupational evidence provided by vocational experts and the DOT. (*Id.*).

In the instant case, Plaintiff asserts that one of the hypotheticals posed to the VE called for *occasional* exposure to several types of environmental hazards, including wetness, humidity, fumes, ropes and scaffolds, high exposed places and "dangerous unguarded machinery." (Plaintiff's Motion, p. 5). However, in the RFC, the ALJ found that Plaintiff could not tolerate *any*

exposure to hazards. (*Id.*, pp. 2, 5).

Here, I find that the ALJ's hypotheticals to the VE were inconsistent with Plaintiff's RFC, namely the questions did not adequately capture all of Plaintiff's impairments and requisite findings about how much exposure to environmental hazards (like heavy machinery) that Plaintiff could tolerate. (Tr. 33, 65-68). Thus, it is hard to understand how the VE reached the conclusion that there were jobs that Plaintiff could perform. As was held in *Reynolds v. Astrue*, Civ. No. SKG-11-559, 2012 WL 1107649, at *21 (D. Md. Mar. 30, 2012), the "crucial issue" was whether the ALJ asked the vocational expert "to consider all of Plaintiff's RFC abilities and limitations, and the [vocational expert] opined that there are jobs that Plaintiff could perform." Here, the issue is similarly whether the ALJ asked the VE to consider all of Plaintiff's impairments and work restrictions. The record reflects that the ALJ did not ask this question. (Tr. 65-68).

The Agency argues that Plaintiff improperly interprets what the VE said at the hearing when asked the hypotheticals and that the ALJ's findings accurately accounted for the hypotheticals. (Agency's Motion, pp. 6-8). The Court cannot interpret the ALJ's decision as the Agency's suggests. Indeed, the Court has an "independent duty to determine if the ALJ supported [his] findings with substantial evidence." *Taishika C. v. Saul*, Civ. No. DLB 19-1994, 2020 WL 2994487, at *3 (D. Md. June 4, 2020) (quotation omitted). Put another way, the ALJ has an obligation to build an accurate and logical bridge between the VE's testimony and his conclusions. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Failure to do so, requires remand. *Id.*

Accordingly, remand is warranted so that the ALJ can clarify the evidence upon which he relied to reach his conclusion that Plaintiff could perform the identified jobs given his finding that she could not tolerate any exposure to hazards (like heavy machinery).

## V. CONCLUSION

For the reasons set forth above, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and, therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge